# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 16-cv-0898-WJM-MEH

RICHARD RUDY,

    Plaintiff,

v.

ECOLOGY & ENVIRONMENT, INC., a Delaware Corporation,

    Defendant.

## ORDER DENYING SUMMARY JUDGMENT

In this age discrimination case, Plaintiff Richard Rudy ("Rudy") alleges that he was terminated from his employment with Defendant Ecology & Environment, Inc. (Defendant, or "E&E"), in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 ("ADEA" or the "Act"). Now before the Court is E&E's Motion for Summary Judgment. (ECF No. 27.) For the reasons explained below, the motion is denied.

## I. STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.

In ruling on summary judgment, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255.  Where the evidence permits competing inferences, the Court will not decide which one is more likely, and summary judgment is not appropriate.  *See Flores v. Monumental Life Ins. Co.*, 620 F.3d 1248, 1254 (10th Cir. 2010) (citing *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984) ("Where different ultimate inferences may be drawn from the evidence . . . the case is not one for summary judgment.")).

## II.  BACKGROUND

The following facts are undisputed unless attributed to a party or source.

Defendant E&E is an environmental consulting firm with offices throughout the United States.  (ECF No. 27 at 3, ¶¶ 1–3.)  Plaintiff Rudy began working for E&E in August 1982 as a hydrogeologist.  (*Id.* ¶ 5; ECF No. 27-2 at 9.)[1]  In general terms, Rudy rose through the ranks over the next 32 years at E&E, working in several locations, and

---

[1] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from documents' internal pagination, as is true in transcript excerpts.

joining E&E's business development team in 1999. (*See* ECF No. 27 at 3–4, ¶¶ 6–13.) Rudy became a Vice President in 2004, when he was 49 years old. (*Id.* ¶ 10.) His primary duty at that time was business development. (*Id.* ¶ 11.)

In late 2010, Rudy was named General Manager ("GM") of an E&E subsidiary, Walsh Environmental, LLC ("Walsh"). (*Id.* ¶¶ 9, 12.) He was named to the GM position as part of E&E's effort to improve Walsh's financial performance, and Rudy's primary responsibility was to improve Walsh's performance and, quoting E&E's language, to "create an integrated, sustainable marketing program which coordinated with E&E's business development efforts." (*Id.* ¶¶ 12–13.) As GM of Walsh, Rudy also retained the title of Vice President of business development with E&E. (*Id.* ¶ 13; ECF No. 32 at 3, ¶ 1.) At that time, he was the only Vice President of business development at E&E who was also the GM of a subsidiary. (ECF No. 37 at 8, ¶ 1.)

Following Rudy's appointment as GM, Walsh continued to perform poorly, losing over $560,000 in fiscal year 2013 and over $680,000 in fiscal year 2014. (ECF No. 27 at 4–5, ¶ 14.) Effective March 27, 2014, Rudy was removed as GM of Walsh to focus solely on business development. (ECF No. 27 at 5, ¶ 19.) At the time, he commented in an e-mail to staff that "I have been doing 2 jobs for a couple of years now; one as my BD and project work as a VP at E&E. The second was being the GM at Walsh. . . . neither was getting enough attention as a result of the other. In my new role I will be focused entirely on developing more large business . . . ." (ECF No. 27-17 at 2–3.)

The parties dispute how successful Rudy was in his business development efforts after being relieved of his responsibilities as GM of Walsh. (ECF No. 27 at 6,

3

¶ 21; ECF No. 32 at 2, ¶ 21; *id.* at 5, ¶ 25; ECF No. 37 at 2–3, ¶ 21.)

Also during the 2013–14 period, E&E was managing significant financial challenges overall. (ECF NO. 27 at 6, ¶ 22.) This led E&E's Board of Directors ("Board") to direct E&E's President, Gerard A. Gallagher, III ("Gallagher") and Chief Operating Officer, Fred McKosky ("McCosky") to evaluate E&E's organizational structure and recommend improvements. (*Id.* ¶ 23.) Gallagher and McCosky recommended restructuring the roles of E&E's Vice Presidents. (*Id.* at 7, ¶ 25.) Their recommendations noted that "[n]ot all E&E VPs are contributing or performing at a level required by the company in order to grow and be successful." (ECF No. 27-7 at 8.) In evaluating 10 current Vice Presidents and 7 other "senior individuals" as potential candidates to become Vice Presidents, Gallagher and McKosky evaluated (1) "Does the VP [or candidate] currently sell and/or effectively manage $5M-$10M in business annually?" and (2) "Does the VP [or candidate] exhibit the required leadership to sell and/or effectively manage $5M-$10M in business annually, over the next five years?" (ECF No. 27 at 6, ¶ 22; ECF No. 27-7 at 17–18.)

As to Rudy, Gallagher and McKosky answered both questions "No." (*Id*. at 17.) They recommended to the Board that Rudy not be retained. (ECF No. 27-7 at 17.) At a Board of Directors meeting on October 16, 2014, the Board considered Gallagher and McKosky's recommendations and voted 6-1 to remove Rudy as Vice President, and he was terminated effective November 20, 2014. (ECF No. 27 at 3, ¶ 4; *id.* at 9, ¶ 37.) At the time, Rudy was 59 years old. (*Id*. at 3, ¶ 4.)

The Board also accepted Gallagher and McKosky's recommendations to remove

4

two other vice presidents, aged 67 and 69.  (ECF No. 27 at 7–9, ¶¶ 26, 31, 40.)  The Board rejected the recommendation to remove another Vice President, aged 61 (*id.* ¶¶ 26, 31, 40), while also appointing five new Vice Presidents, ranging in age from 45 to 57 (*id.* ¶¶ 27, 38).  Thus, as Rudy points out, all five employees elevated to Vice President positions were younger than the three individuals who were removed.[2]  Following his termination, Rudy brought this lawsuit alleging he was "unlawfully discharged . . . on the basis of his age."  (ECF No. 41 at 1, ¶ 3.)

### III.  ANALYSIS

The ADEA provides a remedy for discrimination in private employment on the basis of age.  See 29 U.S.C. § 623(a)(1); *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998).  The Act prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S.C. § 623(a)(1), protecting workers "who are at least 40 years of age," 29 U.S.C. § 631(a).  It was passed "'to promote employment of older persons based on their ability rather than age' and 'to prohibit arbitrary age discrimination in employment,'" *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1276 (10th Cir. 2005) (quoting 29 U.S.C. § 621(b)), and it requires employers "to evaluate [older] employees . . . on their merits and not their age," *McKnight*, 149 F.3d at 1128.

    1.    <u>Direct Evidence of Discrimination</u>

---

[2] One of the three Vice Presidents removed, Mr. Welsh, had previously reduced his responsibilities and remained employed by E&E "on an on-call basis."  (ECF No. 27 at 10, ¶ 43.)  This fact does not alter the Court's conclusion that genuine disputes of material fact remain for trial.

"A plaintiff who seeks to prove that an employer discriminated against him or her can use either direct or circumstantial evidence." *Stone*, 210 F.3d at 1136 (quoting *Ingels v. Thiokol Corp.*, 42 F.3d 616, 620 (10th Cir. 1994)). "Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption. Stated differently, '[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons.'" *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) (quoting *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002)).

Where no direct evidence of discrimination exists, a Plaintiff may prove discrimination by indirect or circumstantial evidence, proceeding under the *McDonnell Douglas* burden-shifting test. *See Stone*, 210 F.3d at 1137 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)); *see also Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1279 (10th Cir. 2010) (*McDonnell Douglas* framework continues to apply to ADEA claims after *Gross v. FBL Financial Svcs., Inc.*, 557 U.S. 167 (2009)). However, "[w]hen a plaintiff offers direct evidence of discrimination . . . [his] claim may move forward without being subjected to the burden-shifting framework set forth in *McDonnell Douglas*." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013).

Here, Plaintiff argues he has direct evidence of age discrimination. (ECF No. 32 at 8.) In assessing whether there is direct evidence of discrimination, the Tenth Circuit "emphasize[s] the importance of context," as well as the "temporal proximity" of allegedly discriminatory or biased statements to adverse employment consequences. *Id.* at 1217 (holding interviewer's comments evincing gender bias were direct evidence

6

of discrimination).  "Stray remarks in the workplace . . . do not constitute direct evidence of discrimination."  *Id.* (internal quotation marks omitted; alterations incorporated; ellipses added).  Thus, discriminatory statements do not qualify as direct evidence of discrimination if the context or timing are not closely linked to the adverse actions.  *Id.* at 1216.  In addition, "[c]omments in the workplace that reflect personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decisionmaking authority and acted on his or her discriminatory beliefs."  *Id.* at 1216 (citing *Ramsey v. City & Cnty. of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990)).

Here, Rudy points to comments made by Gallagher at a "3-Year Plan Meeting" held May 29, 2013.  At the meeting, Gallagher spoke regarding "Organizational Evolution/Change."  (ECF No. 32-4 at 2.)  The notes show that his comments addressed "[m]anagement succession," as well as "[p]reparing the next generation," and "[n]ext generation consultants and advisors."  (ECF No. 32-4 at 2.)  In the same presentation, Gallagher's speech addressed "Youth."  (*Id.*)

In addition, according to notes from an August 26, 2013 meeting attended by Rudy, other E&E Vice Presidents, and members of the Board, the Chairman of the Board, Mr. Frank Silvestro, informed the attendees that "7 of 8 directors are over 70.  We are too old."  (ECF No. 27-5; ECF No. 27 at 14, ¶ 63.)  Also according to Rudy's notes, in addressing "Succession" at this meeting, Mr. Gerald Strobel, E&E's "Chief Executive VP," and a voting member of the Board,[3] reported that Gallagher and Gross were "working on" succession, including by "looking at 3 layers of staff: Old folks;

---

[3] Elsewhere in the record, Gallagher describes Strobel as E&E's "CEO."  (ECF No. 27-6 at 2, ¶ 8.)

7

55–65; People <50." (ECF No. 27-5; ECF No. 27 at 14, ¶ 64; *see also* ECF No. 27 at 9, ¶ 36.)

Viewing this evidence in the light most favorable to Plaintiff—as is required here—a reasonable jury could find these comments provide direct evidence of age discrimination. Defendant argues these comments constitute only "stray remarks," not reflecting age-related bias or animus. However, applying the summary judgment standard, E&E is not entitled to judgment as a matter of law on this disputed point. Given the evidence of Mr. Strobel's August 2013 comments about categorizing employees into "layers" by age, a reasonable jury could agree with Plaintiff that the Board of Directors was "not viewing the employees equally," but was instead evaluating the employees, including Rudy, based on their age. (*See* ECF No. 32 at 9.)

Defendant also argues Rudy's evidence is too attenuated from Rudy's termination to constitute direct evidence of discrimination. However, Gallagher's May 2013 comments were offered in the context of 3-year plan for "organizational change," and the Board voted to terminate Rudy in October 2014, well within a 3-year timeframe. Likewise, the May and August 2013 comments were offered in reasonable "temporal proximity" and connection to the commencement of Gallagher and McCosky's evaluations and reorganization recommendations, developed in 2013–14. As to E&E's argument that the comments were made in the context of discussing the legitimate goal of "succession planning," this does not support a grant of summary judgment. E&E's arguments regarding the context and non-discriminatory intent of these comments might persuade a jury to view this evidence as E&E does. But, since a reasonable jury could evaluate this evidence and its context differently, summary judgment is not

appropriate. The case law cited by E&E that recognizes succession planning as a legitimate business goal neither controls how a jury will view the evidence in this case nor entitles E&E to judgment as a matter of law in the context of a Rule 56 motion.[4]

E&E next seeks to characterize the comments of Gallagher and Strobel as too "vague and ambiguous" to provide direct evidence of discrimination. (ECF No. 27 at 19–20.) Again, while a jury might ultimately agree with Defendant's view of this evidence, it nevertheless raises genuine disputes of material fact, inasmuch as a reasonable jury might agree with Plaintiff that the evidence reflects a discriminatory reason for Rudy's termination. The allegedly "vague" nature of the comments may go to the weight of the evidence at trial but does not entitle E&E to judgment as a matter of law.

E&E also argues that the cited comments were not made by decision-makers, and that the Board did not "rubber stamp" the recommendations made by Gallagher and McCosky. However, Gallagher and McKosky's recommendation to terminate Rudy was adopted by a Board that included both Strobel and Silvestro, both of whom attended and spoke at the August 2013 meeting, with Strobel commenting about placing employees in "layers" by age. Both voted in favor of Rudy's termination. (*See* ECF No. 27-10 at 2, 4.)[5] Thus the comments which could support a finding of

---

[4] E&E cites *Boston v. Blue Cross & Blue Shield of Kansas, Inc.*, 431 F. App'x 763, 767 (10th Cir. 2011), in which the Court evaluated whether "succession planning" was a pretextual rationale under a *McDonnell Douglas* burden-shifting analysis, but that question is not raised here. Likewise, in *Misner v. Potter,* 2009 WL 1872598, at *4–6 (D. Utah June 26, 2009), the facts arose in the context of the defendant's "succession planning process," and the Court applied the *McDonnell Douglas* framework.

[5] The voting members of the Board at the time also included Gerard A. Gallagher, Jr., presumably Gallagher's father, but not the same person. (*See* ECF No. 27-10 at 2.)

discrimination were, at a minimum, attributable to at least one decisionmaker who acted to discharge Rudy.

Finally, the fact that Rudy does not recall whether or how Gallagher defined "Youth" in his May 2013 comments regarding a 3-year plan does not show that Defendant is entitled to judgment as a matter of law. Again, E&E's argument on this point goes to the weight or conclusiveness of this evidence and how to evaluate it in context, but those determinations remain for the jury. The evidence raised by Plaintiff is sufficient to establish genuine disputes of material fact for trial, possibly including why a heading titled "Youth" was included in the formal notes for Gallagher's remarks at the May 2013 3-year planning meeting. Since it is not the Court's role to resolve such factual questions, summary judgment is not warranted on this point.

  2. <u>But-For Causation</u>

To prevail, Plaintiff also must prove by a preponderance of the evidence that his age was the "but-for" cause of his termination. *See Gross,* 557 U.S. at 176; *Simmons v. Sykes Enterprises, Inc.*, 647 F.3d 943, 949–50 (10th Cir. 2011). "[T]his causal standard does not require plaintiffs to show that age was the sole motivating factor in the employment decision. Instead, an employer may be held liable under the ADEA if other factors contributed to its taking an adverse action, as long as age was the factor that made a difference." *Jones*, 617 F.3d at 1277 (internal quotation marks omitted.)

Here, E&E argues that Plaintiff cannot raise a triable issue of fact on causation. The Court disagrees. E&E's arguments rely primarily on its own view of the evidence the Court has addressed above. This evidence would permit a reasonable jury to find that consideration of Rudy's age (including which "layer" of ages he fell into) "made a

difference" in his termination. Moreover, Plaintiff raises a genuine dispute regarding Rudy's job performance during relevant times, including after he was relieved of the dual title of being GM at Walsh, in order to focus on his role as VP of business development. (*See* ECF No. 32 at 3–7, ¶¶ 10–11, 20–23, 25; ECF No. 37 at 2, ¶ 21.) E&E's arguments characterize its own view of how well Rudy performed, and by what metrics, but fall short of showing there is no genuine dispute on these issues, especially given Rudy's contention that Gallagher and McCosky evaluated him using subjective measures. Thus, applying the "but-for" causation standard, as articulated by the Tenth Circuit, the record before the Court reflects a genuine dispute regarding the causation of Rudy's termination. Summary judgment is therefore not appropriate.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant Ecology and Environment, Inc.'s Motion for Summary Judgment (ECF No. 27) is DENIED; and,

2. This case REMAINS SET for a jury trial to begin on **January 29, 2018 at 8:30 a.m.**, and a Final Trial Preparation Conference on **January 18, 2018 at 9:00 a.m.**, both in Courtroom A801. After further consideration of the Final Pretrial Order, the Court *sua sponte* increases the length of the trial to **four days.** Counsel are directed to this Court's Revised Practice Standards (as revised effective December 1, 2017) to ensure compliance with all deadlines triggered by the date of the Final Trial Preparation Conference Trial.

Dated this 12th day of December, 2017.

BY THE COURT:

William J. Martinez
United States District Judge